UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL WADDELL,<br><br>    Plaintiff,<br><br>    v.<br><br>A. MINTON, et al.,<br><br>    Defendants. | Case No. 20-cv-01467-SI<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 1 and 12 |

Nathaniel Waddell, now in custody at Napa State Hospital, filed this *pro se* civil rights action under 42 U.S.C. § 1983. The complaint is now before the court for review pursuant to 28 U.S.C. § 1915A.

**BACKGROUND**

Nathaniel Waddell was housed at the Santa Rita Jail and then sent to Napa State Hospital for restoration of competency to stand trial. *See* Docket No. 12 at 4 (Waddell is at Napa because defense counsel thought Waddell was incompetent to stand trial). He states that he will be returned to Santa Rita Jail once the pandemic-related shelter-in-place order ends and inmate movement is allowed. *Id.* at 3. His complaint concerns problems at the jail.[1]

The complaint alleges that unnamed staff members at Santa Rita Jail misuse technology that "can read the thoughts of inmates" on what he "assume[s] is a computer monitor" and "can implant audio frequencies into the minds of inmates." Docket No. 12 at 1. Waddell asserts that staff members use this technology to insert thoughts and voices into his mind. They allegedly continue

---

[1] This court construes the complaint to be the document at Docket No. 1 as amended by the document at Docket No. 12.

to do this to him, even though he is no longer at Santa Rita Jail. *Id.* For example, they "repeat each and every thought back to [him] from the time [he wakes] up till the time [he goes] to sleep." *Id.*

Waddell alleges that the stress induced by the implanted thoughts caused him to act out violently with deputies at the jail. Waddell alleges that on one occasion, an implanted voice told him that "if I try and headbutt a deputy they would stop implanting thoughts." *Id*. at 2. Waddell alleges that some unnamed deputies applied excessive force to his wrists after slamming him onto the ground in response to him headbutting deputy Micke, leaving him with calcium deposits in his right hand, bruised bones, and nerve damage. He alleges that on another occasion, he struck deputy Mayfield, and in response deputy Mayfield brought him to the ground and punched him. Waddell suspected his rib was broken but alleges that he was denied x-rays. He also alleges that "the staff" dropped a rubber pellet grenade in his cell when he refused to submit to being handcuffed. *Id*. He alleges that afterwards he was placed in a safety cell covered with urine and feces.

Waddell also alleges that, on July 11, 2019, deputy Calhoun emptied Waddell's lunch bag onto the ground and "tried to provoke [him] into a fight." *Id.* at 3. He also alleges that deputy J. Suezaki advised him to kill himself, and deputy C. Comfort and other unnamed deputies told him that he was going to be killed. Waddell also alleges that deputies threatened his and his family members' lives.

Of the thirty-three defendants listed in Waddell's complaint (*see* Docket No. 1 at 3), there are no allegations against particular people except as mentioned above.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b)(1),(2). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

2

1  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Waddell's conditions-of-confinement claims are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause rather than the Fourteenth Amendment's Due Process Clause because he was a prisoner at the relevant time. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc). Although he does not allege the reason for his placement in jail, the inmate locator for the Alameda County Sheriff's Department shows that Waddell was on probation, and probation was revoked for a 2018 case, after his arrest in July 2019. *See* https://www.acgov.org/sheriff_app (last visited June 11, 2020). The court assumes for present purposes that he was a prisoner and not merely a pretrial detainee at the relevant times (although he remains free to allege otherwise in his amended complaint).

A. Mind Implantation-Technology

Waddell's claim that his jailers have been implanting thoughts in his mind is dismissed without leave to amend. The prisoner litigation screening statute, 28 U.S.C. § 1915A, accords judges "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v.Williams*, 490 U.S. 319, 327 (1989)); *see also Lomax v. Ortiz-Marquez,* No. 18-8839, slip op. at 7 (U.S. June 8, 2020) (citing *Neitzke*) (before § 1915A was enacted, "the statute governing IFP claims targeted frivolous and malicious actions, but no others"; § 1915A expands the category of actions that may be dismissed to include those that fail to state a claim as well as those that are frivolous and malicious). "Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Neitzke*, 490 U.S. at 328. The allegations that jail officials are using some sort of unseen devices and technology to implant voices and thoughts in Waddell's mind describe a "fantastic or delusional

1  scenario," and this court exercises its power under § 1915A to dismiss the frivolous claim.

2

3   B. Verbal Harassment

4  Waddell's claims that guards told him to kill himself, threatened his and his family's lives, and provoked him to fight are dismissed with leave to amend. Allegations of verbal harassment and abuse fail to state a claim cognizable under 42 U.S.C. § 1983. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at prisoner does not state constitutional claim); *Burton v. Livingston*, 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without more, do not invade a federally protected right"); *cf. Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012) ("'the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons' of which 'we do not approve,' but which do not violate the Eighth Amendment.")

A statement made by a correctional officer to deliberately inflict psychological pain on a particularly psychologically vulnerable inmate might go beyond "simple verbal harassment" and present an Eight Amendment violation. *See Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019) (nurse not entitled to summary judgment on deliberate-indifference-to-medical-needs claim where she "taunted and encouraged an inmate known to be suicidal and in the midst of a mental health crisis to take his own life"). Waddell does not indicate that he was suicidal. If he was suicidal at the time guard told him to kill himself, in his amended complaint he should assert his suicidal mental state and should allege facts, if he has them, that suggest the offending staff member was aware of his psychological vulnerability. He should also link the particular defendant by name to this claim and provide a date of the incident if possible.

Waddell alleges that the jailers' offensive comments caused him emotional upset without physical injury. Any mental upset suffered as a result of these alleged harassment incidents is not actionable under 42 U.S.C. § 1997e(e). A prisoner may not allege a claim for mental injury when, as here, there has been no physical injury. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined

4

in section 2246 of Title 18)."

### C. Uses of Force

The treatment a convicted prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley*, 475 U.S. at 320-21. In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *LeMaire v. Maass*, 12 F.3d 1444, 1454 (9th Cir. 1993).

Waddell's excessive force claims are dismissed with leave to amend. Not all uses of force are unconstitutional; rather, it is the use of *excessive* force that amounts to a constitutional violation. The allegations regarding at least some uses of force indicate that deputies were responding to Waddell's own violent actions. In his amended complaint, Waddell should allege facts, if he has them, that suggest that the deputies' actions were in excess of the need for force if the force was used in response to his own misbehavior. The complaint's excessive-force claims also are lacking in other ways. For the incident in which Waddell claims he was slammed to the ground in response to headbutting deputy Micke, Waddell must name the specific defendants responsible and should provide a date for the incident. Waddell should also provide a date for the incident in which deputy J. Mayfield punched Waddell in response to Waddell striking him. Waddell should provide more facts regarding both incidents to show that the amount of force used in each case was inappropriate

relative to the offense.

The amended complaint for both the excessive force claim and the safety-cell claims discussed below must list every defendant for that particular claim. Waddell should not refer to defendants generally as "the deputies," and must instead identify each involved defendant by name and explain the specific actions or omissions of each person that caused a violation of his rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

### D. Placement in the Safety Cell

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced. *See, e.g.*, *Hudson*, 503 U.S. at 9-10 (8th Amendment excludes from constitutional recognition de minimis uses of force); *Hearns v. Terhune*, 413 F.3d 1036 (9th Cir.2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, were enough to state a claim of unconstitutional prison conditions); *Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir.) *amended*, 75 F.3d 448 (9th Cir. 1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without mattress for one night is insufficient to state Eighth Amendment

6

violation and no amendment can alter that deficiency), *judgment vacated on other grounds*, 493 U.S. 801 (1989); *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water).

In prison-conditions cases, the necessary state of mind to establish an Eighth Amendment violation is one of "deliberate indifference." *Wilson*, 501 U.S. at 302-03. Neither negligence nor gross negligence will constitute deliberate indifference. *See Farmer*, 511 U.S. at 835-37 & n.4. A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837.

Waddell does not provide enough information about his placement in the dirty safety cell for the court to determine that he has stated a claim. He does not allege how long he was in the cell or the harm he suffered as a result of his placement therein, as needed to plausibly suggest that his placement was sufficiently serious for an Eighth Amendment claim. He also must link individual defendants to this claim by alleging what each particular deputy did or failed to do that caused this alleged Eighth Amendment violation.

E. Lunch on the Floor

Waddell's allegation that deputy Calhoun emptied his lunch onto the floor does not rise to the level of an Eighth Amendment violation. *See DeMallory v. Cullen*, 855 F.2d 442, 444 (7th Cir. 1988) (correctional officer spitting upon prisoner does not rise to level of constitutional violation). The claim is dismissed.

**CONCLUSION**

The complaint is dismissed with leave to amend. Plaintiff must file an amended complaint that complies with the directions in this order no later than **August 3, 2020**. Plaintiff must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page of that document. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc)

7

("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims waived if not repled.") Failure to file the amended complaint by the deadline will result in the dismissal of this action.

**IT IS SO ORDERED**.

Dated:  June 16, 2020

_____
SUSAN ILLSTON
United States District Judge